IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

S&S VENTURES, LLC,

    Plaintiff,

v.                                                                CIVIL ACTION NO. _____

SOUTHLAND WOOD RECYCLING, LLC;
and LUCIUS WAYNE MOORE,

    Defendants.
_____/

**COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES,
AND FOR ACCOUNTING**

COMES NOW Plaintiff S&S Ventures, LLC ("S&S") and hereby files this Complaint for Declaratory Judgment, Damages, and for Accounting against Defendants Southland Wood Recycling, LLC ("Southland Wood") and Lucius Wayne Moore ("Moore"), showing the Court as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. S&S is a Delaware limited liability company.

2. The sole member of S&S is Dr. Stephen Duncan ("Duncan"), who is domiciled in the state of Florida, residing at 6377 Heartland Circle, Tallahassee, FL 32312, and, therefore, is a citizen of Florida.

3. Defendant Southland Wood is a Georgia limited liability company.

4. Upon information and belief, the sole member of Southland Wood is Defendant Moore, who, upon information and belief, is domiciled and resides in Lowndes County, and can

1

be served with service of process at 3471 Brown Road, Valdosta, Ga 31601.  Therefore, Moore is a citizen of Georgia.

5. Accordingly, there is complete diversity amongst the parties to this action.

6. Furthermore, the amount in controversy exceeds $75,000, exclusive of interests and cost.

7. This Court therefore has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and other applicable law because the cause of action arose in Lowndes County, Georgia – where Southland Wood is located – which is situated within the district and divisional boundaries of the Valdosta Division of the Middle District of Georgia, and on further grounds that Defendants Southland Wood and Moore are domiciled within said District and Division.

## FACTUAL BACKGROUND

9. Southland Wood has been in operation since 2009 and specializes in the production of lumber products, operating sawmills at multiple locations in Georgia and Florida.

10. In 2015, Southland Wood began preparations for an expansion into an additional operational site in Hamilton County, Florida (the "Genoa Project").

11. To fund the Genoa Project, and other ventures, Southland Wood sought investment from various individuals and entities, including S&S.

12. Sometime before June 2018, Moore, on behalf of Southland Wood, contacted S&S, through Duncan, and solicited an investment from S&S in exchange for an ownership interest.

13. Based on Moore's statements and representations, on behalf of Southland Wood, S&S understood that any investment would be made in exchange for S&S becoming a member of

the limited liability company ("LLC") that Moore was representing and/or working on behalf – and the only limited liability company with which Moore was associated was Southland Wood.

14. As such, based on Moore's statements and representations, S&S understood that any investment given to Moore was an investment in Southland Wood and was made in exchange for a membership interest in Southland Wood.

15. In June 2018, S&S committed to an initial investment of $60,000 in Southland Wood.

16. In July 2018, Moore informed S&S that Southland Wood had procured enough capital for the planned projects.

17. In August 2018, Moore informed S&S that work had begun on the Genoa Project.

18. Moore, on behalf of Southland Wood, sought additional investment from S&S in November 2018, offering a 1% interest in Southland Wood for every $20,000 investment.

19. S&S accepted this offer from Southland Wood and provided more than $240,000 to Southland Wood with the understanding that, in exchange, it would be granted a corresponding ownership interest in Southland Wood.

20. As such, Southland Wood and S&S entered into a verbal agreement (the "Agreement"), through Moore and Duncan, that, in exchange for an investment of $240,000, S&S would be made a member of Southland Wood with a 10% interest.

21. On November 18, 2018, the Agreement was memorialized in a written instrument labeled as a "Receipt" (the "Receipt"), which was signed by Moore on behalf of Southland Wood. A copy of the Receipt is attached hereto as Exhibit A.

22. The Receipt states that "S&S VENTURES has invested sufficient capital to receive 10% of the profit/loss, equity in Southland Wood Recycling, LLC located in Genoa, Florida as per our terms of agreement."

23. In December 2019, through communication with Duncan, Moore confirmed that S&S had a 10% ownership interest in Southland Wood.

24. Upon information and belief, Southland Wood has an operating agreement (the "Operating Agreement") that, among other things, states the membership interests of the various members of Southland Wood and governs the disbursements to be made to those members.

25. S&S made repeated requests to review the Operating Agreement, but Southland Wood never provided a copy to S&S or Duncan.

26. From November 2018 until December 2021, Moore continued to solicit investment into Southland Wood and attempted to procure loans to fund the planned projects at Southland Wood.

27. After December 2019, in reliance on Moore's representation that S&S had been made a 10% owner of Southland Wood, S&S provided assistance, in the form of time and additional money to fund Southland Wood's various ventures.

28. In January 2021, Moore informed S&S that mill operations at the Genoa Project were running and that major companies were lined up for contract commitments with Southland Wood.

29. Moore informed S&S on February 17, 2021, however, that the Genoa Project was not "running yet."

30. Moore then informed S&S that there was an opportunity for Southland Wood to be sold for $7.5 million.

31. Moore told S&S that the mill was "finally producing" on August 13, 2021.

32. On September 22, 2021, Moore informed S&S that Southland Wood was having "capital issues."

33. On November 1, 2021, Moore again informed S&S that Southland Wood and/or the mill at the Genoa Project may be sold, stating that there was a serious interested buyer.

34. At some time in December 2021, Southland Wood entered into an agreement for the sale of Southland Wood and/or some or all of the assets of Southland Wood.

35. S&S, through Duncan, on December 16, 2021, in response to the news of the potential sale, sought assurance form Moore that Southland Wood would provide him a share of the profits consistent with his 10% ownership interest in Southland Wood.

36. In response to Duncan's December 16 request, Moore refused to provide any assurance that S&S would be compensated in accordance with its 10% ownership interest.

37. Moore informed S&S on December 27, 2021 that the planned sale of Southland Wood and/or its assets had fallen through.

38. Afterwards, Moore, and Southland Wood, cut off communication with S&S and Duncan for a period – from January 2022 until April 2022.

39. Upon information and belief, in that time, Southland Wood entered into another agreement for the sale of Southland Wood and/or some or all of the assets of Southland Wood (the "Sale").

40. Based on this information and belief, on March 29, 2022, S&S, through undersigned counsel, wrote a letter to Southland Wood and Moore (the "March 29 Letter") in which S&S stated that, based on the Agreement, and as evidenced by the Recipt, it held a 10% ownership interest in Southland Wood and demanded that Moore and Southland Wood provide

assurance that S&S's 10% interest will be recognized and, as such, that S&S will be compensated accordingly for any sale of Southland Wood and/or its assets.

41. Moore responded to the March 29 Letter through a letter dated April 11, 2022 (the "April 11 Response"), and, in that response, Moore stated that (1) the Sale had not yet been consummated; (2) that S&S "will receive funds due per the operating agreement for the Southland Genoa Project" when/if the Sale is consummated; and (3) "the Southland Genoa project did not begin operation in 2018. The facility was under construction and has never made a sale."

42. Further, in the April 11 Response, Southland Wood offered S&S $67,500, which, according to Southland Wood and Moore, represented 10% of the "funds received on the Genoa facility."

43. Accordingly, through the Response, Southland Wood and Moore stated that S&S was only owed a 10% interest in the Genoa Project and did not have a 10% interest in Southland Wood.

44. The Genoa Project is not a separate entity from Southland Wood.

45. Rather, the Genoa Project is a venture of, and owned by, Southland Wood.

46. S&S then responded through a letter dated April 26, 2022 (the "April 26 Letter") in which S&S: (1) refused to accept the payment of $67,500 as settlement of what it was owed; (2) reiterated that S&S, through the Agreement and Receipt, has a 10% ownership interest in Southland Wood and not merely the Genoa Project; and (3) sought clarification regarding Southland Wood's claims that S&S only had an interest in the Genoa Project.

47. Moore then responded, on behalf of Southland Wood, to the April 26 Letter through a letter dated May 9, 2022 (the "May 9 Response") in which Moore again reiterated that, when/if the Sale is consummated, S&S will be owed only 10% of the Genoa Project.

48. As such, through the April 11 Response and the May 9 Response, Southland Wood and Moore denied that S&S was entitled to a 10% interest in Southland Wood as was stated in the Agreement and the Receipt.

49. Instead, Southland Wood and Moore contended that S&S was only due 10% of the profits/losses of the Genoa Project.

50. Southland Wood and Moore stated that, in the event the Sale is consummated, or any other event occurred by which an investor in Southland Wood would be owed its interests, Southland Wood would not compensate S&S pursuant to a 10% ownership interest in Southland Wood.

51. The events described herein occurred within the state of Georgia, and the Agreement was entered into in the state of Georgia. Accordingly, S&S's claims as alleged herein are governed by the laws of the state of Georgia.

## COUNT I:  DECLARATORY JUDGMENT
### (Against Southland Wood)

52. S&S re-alleges the facts alleged in Paragraphs 1 through 51 as if stated fully herein.

53. As discussed, a dispute has arisen between S&S and Southland Wood as to the existence of a valid contract between S&S and Southland Wood.

54. S&S contends that a valid and enforceable verbal agreement was entered into between Southland Wood and S&S in the form of the Agreement.

55. S&S further contends that the terms of the Agreement were set down in writing in the Receipt.

56. Under the terms of the Agreement, as set forth in the Receipt, S&S agreed to, and did, invest capital in Southland Wood in exchange for a 10% ownership interest in Southland Wood.

57. Southland Wood and Moore contend instead that S&S does not hold a 10% ownership interest in Southland Wood but rather that S&S holds only a 10% ownership interest in the Southland Genoa Project.

58. As such, Southland Wood contends that there is no legal and enforceable agreement between S&S and Southland Wood; rather, Southland Wood and Moore contend that any such ownership agreement is between S&S and the Southland Genoa Project.

59. There is no separate legal entity comprising the Southland Genoa Project; instead, the Southland Genoa Project is merely owned and operated by Southland Wood.

60. As such, S&S could not, as a matter of law, be an owner of the Southland Genoa Project in the way that Southland Wood and Moore claim or enter into an enforceable agreement with the Southland Genoa Project.

61. Moreover, the plain terms of the Receipt state that S&S has invested sufficient capital in Southland Wood to entitle it to a 10% ownership interest in Southland Wood; the Receipt was signed by Moore on behalf of Southland Wood.

62. An actual existing and bona fide controversy therefore exists between S&S and Southland Wood as to their legal relations with respect to the Agreement, and the rights of the Parties under this Agreement can only be determined by a declaratory judgment.

63. S&S therefore respectfully requests that the Court enter a declaratory judgment that:

> (1) Declares the rights and other legal relations of S&S and Southland Wood with respect to the Agreement; and
>
> (2) Declares that a valid and enforceable contract exists between S&S and Southland Wood by reason of the Agreement and as set forth in the Receipt.

## COUNT II: BREACH OF CONTRACT
### (Against Southland Wood)

64. S&S re-alleges the facts alleged in Paragraphs 1 through 63 as if stated fully herein.

65. As stated, S&S and Southland Wood entered into an enforceable verbal agreement in the form of the Agreement.

66. The terms of the Agreement are also set forth in the Receipt.

67. The plain terms of the Receipt state that S&S is entitled to a 10% ownership interest in Southland Wood.

68. The Receipt also shows that S&S has performed under the Agreement by investing sufficient capital in Southland Wood to entitle S&S to a 10% ownership interest.

69. As such, S&S is entitled to 10% of the profits of Southland Wood in the event of a sale of the company and/or assets held by the company, such as the Sale.

70. To that end, S&S sought assurance from Southland Wood that S&S would be compensated in the event of the sale of Southland Wood and/or the assets of that company.

71. Through the April 11 Response and the May 9 Response, Southland Wood gave notice that it would not perform under the Agreement and totally repudiated it by providing notice to S&S that it contended that S&S was only a 10% owner of the Genoa Project, and not Southland Wood, and would therefore not compensate S&S consistent with its 10% ownership interest in Southland Wood as described in the Agreement.

72. In addition, despite agreeing to do so, Southland Wood has not made S&S a member of Southland Wood or granted any ownership interest in Southland Wood to S&S.

73. As such, Southland Wood has failed to perform under the Agreement by failing to grant S&S a 10% ownership interest in Southland Wood.

74. At the time Southland Wood notified S&S that it would not perform under the Agreement in that it would not honor S&S's 10% ownership interest in Southland Wood, S&S had already performed under the Agreement in that S&S had already provided to Southland Wood the investment described in the Agreement.

75. Southland Wood's failure and refusal to perform its obligations under the Agreement has damaged S&S by depriving S&S the consideration promised in the Agreement.

76. Specifically, S&S is deprived of the percentage of the profits and losses of Southland Wood to which S&S is owed in an amount to be proven at trial; in addition, S&S has been deprived of the amount of money it has invested in S&S pursuant to the Agreement.

## COUNT III:  FRAUD
**(Against Moore and Southland Wood)**

77. S&S re-alleges the facts alleged in Paragraphs 1 through 76 as if stated fully herein.

78. Southland Wood and Moore represented to S&S in the Agreement and Receipt that, if S&S performed according to the Agreement, S&S would be granted a 10% ownership interest in Southland Wood.

79. S&S performed pursuant to these assurances and invested sufficient capital into Southland Wood to be granted a 10% ownership interest.

80. In December 2019, Moore, on behalf of Southland Wood, represented to S&S that S&S did have a 10% ownership interest in Southland Wood.

81. In fact, Southland Wood and Moore never intended to fulfill the promises made to S&S.

82. At the time they made these representations, Southland Wood and Moore had no intention of making S&S a 10% owner of Southland Wood but instead intended to make S&S only a 10% owner in the Genoa Project.

83. Moore and Southland Wood have now stated that S&S has not been in fact made a 10% owner of Southland Wood.

84. As they planned to do, Moore and Southland Wood have instead claimed that S&S was only made a 10% owner of the Genoa Project.

85. The Genoa Project was only a venture of Southland Wood and not a separate entity; as such, it was impossible for S&S to be an owner of any kind of only the Genoa Project, but Moore and Southland Wood knew this and made the representations nonetheless.

86. Further, at the time Moore and Southland Wood represented to S&S that S&S was a 10% owner of Southland Wood, they were aware that this statement was false.

87. Moore and Southland Wood made these false representations with the intent to induce S&S to invest additional capital into Southland Wood.

88. S&S did in fact justifiably rely on the representations made by Southland Wood.

89. Specifically, S&S relied on the representation in December 2019 that S&S had been made a 10% owner of Southland Wood and, as a result thereof, invested time and additional capital into Southland Wood.

90. S&S's reliance on the representations of Southland Wood and Moore caused S&S harm in the form of capital invested into Southland Wood after Moore and Southland Wood's representation in December 2019 that S&S held a 10% ownership interest in Southland Wood—this amount was in addition to that invested by S&S pursuant to the Agreement as consideration for the 10% ownership interest in Southland Wood.

91. S&S did not become aware of the false representations made by Moore and Southland Wood until it received the April 11 Response, which was provided to S&S on April 11, 2022.

## COUNT IV:  NEGLIGENT MISREPRESENTATION
### (Against Moore and Southland Wood)

92. S&S re-alleges the facts alleged in Paragraphs 1 through 91 as if stated fully herein.

93. In the alternative, Moore and Southland Wood made the representations set forth in paragraphs 78 and 80, above, without knowledge of the falsity of those representations.

94. As such, Moore and Southland Wood negligently supplied false information to S&S, a foreseeable recipient of that false information.

95. S&S reasonably relied on this false information.

96. S&S has sustained economic damages as a result of the negligent misrepresentations made by Moore and Southland Wood in the form of the capital invested in Southland Wood.

97. S&S did not become aware of the false representations made by Moore and Southland Wood until it received the April 11 Response, which was provided to S&S on April 11, 2022.

## COUNT V:  VICARIOUS LIABLITY
### (Southland Wood)

98. S&S re-alleges the facts alleged in Paragraphs 1 through 97 as if stated fully herein.

99. Upon information and belief, Moore serves as the manager of Southland Wood, and, at all times relevant hereto, Moore was acting within the scope of his agency with Southland Wood.

100. S&S sustained injuries and damages as a direct result of the acts and omissions of Moore, who is an agent of Southland Wood, and those acts and omissions were conducted within the course and scope of his agency.

101. Southland Wood is responsible for the actions of Moore under the doctrines of

*respondeat superior,* agency, or apparent agency.

## COUNT VI:  UNJUST ENRICHMENT
### (Against Southland Wood)

102.  S&S re-alleges the facts alleged in Paragraphs 1 through 101 as if stated fully herein.

103.  S&S contributed money to Southland Wood to fund the various ventures and operation of Southland Wood, including the Genoa Project.

104.  S&S provided this money to Southland Wood under the belief it would be made a 10% owner of Southland Wood.

105.  S&S has not been made a 10% owner of Southland Wood.

106.  As such, S&S did not receive any benefit in return for the money it contributed to Southland Wood and, as a result, Southland Wood has been unjustly enriched.

107.  S&S has sustained damages as a result of the unjust enrichment of Southland Wood.

## COUNT VII:  ACCOUNTING
### (Against Southland Wood)

108.  S&S re-alleges the facts alleged in Paragraphs 1 through 107 as if stated fully herein.

109.  Despite multiple requests by S&S, Southland Wood has never provided S&S with a copy of the Operating Agreement.

110.  Upon information and belief, the Operating Agreement requires that the books of Southland Wood shall be kept and that members shall have access to those books.

111.  S&S hereby demands that Southland Wood provide an agent of S&S with access to the books of account maintained by Southland Wood, including, but not limited to, bank statements that demonstrate the funds that have been received by Southland Wood, the profits and

expenses of Southland Wood, the manner in which any and all such funds have been expended, and any and all information related to the Sale.

### COUNT VIII: PUNITIVE DAMAGES
**(Against Moore and Southland Wood)**

112. S&S re-alleges the facts alleged in Paragraphs 1 through 111 as if stated fully herein.

113. The actions of Moore and Southland Wood show willful misconduct, malice, fraud, wantonness, oppression, and/or that entire want of care which would raise the presumption of conscious indifference to consequences and, as a result, S&S prays for punitive damages.

### COUNT IX:  ATTORNEYS' FEES
**(Against Moore and Southland Wood)**

114. S&S re-alleges the facts alleged in Paragraphs 1 through 113 as if stated fully herein.

115. The actions of Moore and Southland Wood, as described above, were undertaken in bad faith, and in fact constituted intentional torts executed with willful, wanton, and reckless disregard for the rights of S&S.  Defendants also acted in bad faith in forcing this matter to litigation, and their actions have caused S&S unnecessary trouble and expense such that S&S is entitled to recover the costs and expenses of litigation, including attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

### PRAYER FOR RELIEF

WHEREFORE, S&S prays that judgment be made and entered in its favor and against Defendants as follows:

(a) That the Court enter a declaratory judgment in favor of S&S declaring that there is an enforceable contract between S&S and Southland in the form of the Agreement as set forth in the Receipt;

(b) That the Court enter a decree directing Southland Wood to perform under the terms of the Agreement, as set forth in the Receipt, and to recognize S&S as a 10% owner of Southland Wood and that Southland Wood disburse to S&S 10% of the profits of Southland Wood as such disbursements are made to all other individuals and/or entities holding a membership interest in Southland Wood, including those profits currently owed and those in the future;

(c) In the alternative, that the Court award S&S damages, including compensatory, incidental, consequential, and/or all other damages to be proven at trial, related to Southland Wood's breach of contract in an amount to be proven at trial;

(d) That the Court award prejudgment interest on any such damages as provided by O.C.G.A. § 13-6-13 at the rate of 7% per annum pursuant to O.C.G.A. § 7-4-2;

(e) That the Court award S&S compensatory, actual, and/or general damages in an amount to be proven at trial as it relates to all other claims asserted by S&S;

(f) That the Court award S&S punitive damages in an amount sufficient to deter Moore and Southland Wood from engaging in future wrongful conduct;

(g) That the Court award all reasonably incurred attorneys' fees and expenses of litigation associated with prosecuting these claims;

(h) That the this matter be tried by a jury of twelve (12) on all issues so triable;

(i) That the Court award any such other and further relief as this Court deems just and proper.

This 1st day of September, 2022.

                        ALEXANDER & VANN, LLP

                        *s/ H. Thomas Shaw*
                        _____
                        H. Thomas Shaw  (Ga Bar No. 593166)
                        411 Gordon Avenue
                        Thomasville GA 31792
                        Telephone:  (229) 226-2565
                        Facsimile: (229) 228-0444
                        E-mail: tshaw@alexandervann.com
                        *Attorney for Plaintiff S&S Ventures, LLC*